IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACQUELINE RAWL,  )
        Plaintiff,  )
        vs.  )   Civil Action No.8-594
MICHAEL J ASTRUE, Commissioner of Social Security,  )
        Defendant.  )

AMBROSE, Chief District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment (Docket Nos. 9 and 11). Both parties have filed briefs in support of their Motions. (Docket Nos. 10 and 12). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (Docket No. 11) and denying Plaintiff's Motion for Summary Judgment. (Docket No. 9).

### OPINION

**I.  BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383. On August 29, 2005, Plaintiff filed an application alleging that since October 14, 2003, she was disabled due to lower back pain. (R. 13). Administrative Law Judge ("ALJ") John J. Porter held a hearing on May 18, 2007, at which time Plaintiff, who was represented by counsel, testified and a vocational expert testified. (R. 501-526). On July 18, 2007, the ALJ issued

an unfavorable decision, finding that while Plaintiff did suffer from severe physical impairments and was therefore unable to continue her past work, Plaintiff was not disabled because she retained the residual functional capacity to perform sedentary work with a sit/stand option and was therefore able to find employment in a significant number of jobs in the national economy. (R. 13-22). After exhausting her administrative remedies, Plaintiff filed this action.

The parties have filed cross-motions for summary judgment. (Docket Nos. 9 and 11). The Plaintiff raises the following issues on appeal:

1. Whether the ALJ's decision that Plaintiff did not have a medically determinable mental impairment was based on substantial evidence.

2. Whether the ALJ improperly disregarded the opinion evidence of Dr. Andrew Cole.

(Docket No. 10, Plaintiff's Brief in Support, p. 2). I will address each issue in turn.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See, 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

**B.     Whether the ALJ's decision that Plaintiff did not have a medically determinable mental impairment was based on substantial evidence**

Plaintiff argues that she suffers from long-term depression and anxiety, and consequently, the ALJ erred in finding that Plaintiff does not have a medically determinable mental impairment.

3

(Doc. No. 10, Plaintiff's Brief, p. 3-4). To support her contention, Plaintiff relies on (1) the medical record of her November 15, 2006, visit to Heritage Valley, and (2) a note from her August 16, 2004, visit with Dr. Lehman. *Id.* In making his determination, the ALJ considered the medical record of Plaintiff's November 15, 2006, treatment at Heritage Valley. (R. 16). He noted that she was complaining of depression and anxiety, "she was being pulled in a hundred different directions," and was prescribed Prozac and Klonopin. (R. 16, 293). Plaintiff emphasizes that, at this visit, she expressed that her anxiety and depression were "worsening," had been "ongoing for quite sometime," and that she suffered from daily panic attacks. (Docket No. 10, Plaintiff's Brief, p. 3, citing R. 293). In addition to Plaintiff's visit to Heritage Valley, Plaintiff relies on a note from her August 16, 2004, visit with Dr. Lehman. *Id.,* p.4. On this occasion, Dr. Lehman noted that Plaintiff was "quite anxious." (R. 153). Plaintiff argues that these two references, taken together, "indicate a long-term mental impairment, not a mild or occasional depressed mood." (Docket No. 10, Plaintiff's Brief, p. 4). The ALJ, however, disagreed and I find substantial evidence in the record to support his conclusion.

First, in Plaintiff's initial request for benefits, she made no mention of any mental impairment. (R. 57-67). Indeed, in her initial disability report, Plaintiff provided that she had never been seen "by a doctor/hospital/clinic or anyone else for emotional or mental problems." (R. 63). Second, in a November 15, 2005, telephone conversation with the SSA's disability examiner, Plaintiff stated that she had "no mental allegations or treatment." (R. 221). It is important to note that this telephone conversation took place between the visit to Dr. Lehman on August 16, 2004, and her visit to Heritage Valley on November 15, 2006, when Plaintiff was supposedly having ongoing symptoms of depression and anxiety. Third, as the ALJ indicated, the November 15, 2006, visit to Heritage Valley was the only time Plaintiff sought treatment or psychiatric help for her condition. Besides the two occasions noted, Plaintiff never made any other mention of her

4

symptoms. In fact, only six weeks prior to her visit to Heritage Valley, Plaintiff stated that she was "reasonably happy" in an appointment with Dr. Yakish. (R. 234). Finally, Plaintiff has never received an actual diagnosis of depression or anxiety. While the Plaintiff may have felt depressed or anxious on a couple occasions, "the mere presence of a mental disturbance does not automatically indicate a severe disability." *Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999). Based on the evidence cited above, I find there is substantial evidence to support the ALJ's conclusion that there is no medically determinable mental impairment in this case.

**C.    Whether the ALJ improperly disregarded the opinion evidence of Dr. Cole**

Plaintiff further argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly disregarded the opinion of Dr. Andrew Cole, a one time consulting physician. (Docket No. 10, Plaintiff's Brief, pp. 4-6). After a review of the evidence, I disagree.

In evaluating the weight to give to a medical opinion, an ALJ should consider numerous factors, including: the treatment relationship (length, nature, and extent), the opinion's supportability, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d).[1]

---

[1] 20 C.F.R. § 404.1527(d) titled evaluating opinion evidence provides as follows:

(d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

    (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

    (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

Accordingly, an ALJ may reject a medical opinion if it is contradicted by other substantial evidence in the case. *Id.* In this case, Dr. Cole opined that Plaintiff could not sit cumulatively for more than 15 minutes in an eight hour day, nor stand and walk for more than 10 minutes in a day. (R. 215). The ALJ gave Dr. Cole's opinion no weight, "since it is inconsistent with the claimant's description of her daily activities in the initial claims questionnaire as well as her described abilities in Dr. Abraham's report." (R. 20). Based on the evidence of record, I find there is substantial evidence in the record to support the ALJ's decision to discount Dr. Cole's evaluation of Plaintiff on October

---

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

26, 2005. For example, during s telephone call with a SSA examiner, Plaintiff stated that she had "no problems sitting." (R. 221). Furthermore, Plaintiff testified at the hearing that she can sit, stand, and walk again after laying down for just 20 minutes. (R. 513-14). Plaintiff indicated on her Daily Activities Questionnaire that she could sit, but had to move a lot and change positions to get comfortable. (R. 88). She also indicated that she cold carry two or three grocery bags at a time if they were light. (R. 86). Additionally, Plaintiff testified that she can sit through a two hour church service with intermittent walking (R. 517); walk to the park and sit while her boyfriend fishes (R. 519); dust, sweep, and mop the floor (R. 517); and babysit three children, albeit with the help of her friend, five nights a week for two and a half hours each day. (R. 507-08). Consequently, I find no error on this issue.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUELINE RAWL,   )<br>  )<br>   Plaintiff,   )<br>  )<br>   vs.   )<br>  )<br>MICHAEL J ASTRUE, Commissioner of   )<br>Social Security,   )<br>  )<br>   Defendant.   ) | Civil Action No.8-594 |

AMBROSE, Chief District Judge

## **ORDER**

AND now, this 5th day of December, 2008, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 9) is denied and Defendant's Motion for Summary Judgment (Docket No. 11) is granted.

The case shall be marked "CLOSED" forthwith.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge